ATTORNEYS FOR APPELLANT
Jennifer M. Lukemeyer
Tyler D. Helmond
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
Gregory F. Zoeller
Attorney General of Indiana

Andrew A. Kobe
Michael Gene Worden
Deputy Attorneys General
Indianapolis, Indiana



FILED
Jan 14 2016, 1:20 pm
CLERK
of the supreme court,
court of appeals and
tax court

# In the
# Indiana Supreme Court

No. 49S02-1601-CR-20

LEANDREW BEASLEY,

*Appellant (Defendant below),*

v.

STATE OF INDIANA,

*Appellee (Plaintiff below).*

Appeal from the Marion County Superior Court, No. 49G01-1210-MR-67593
The Honorable Kurt M. Eisgruber, Judge

On Petition to Transfer from the Indiana Court of Appeals, No. 49A02-1406-CR-382

**January 14, 2016**

**Massa, Justice.**

Leandrew Beasley appeals his convictions for the murder of James Allen, the attempted murder of Gerald Beamon, and unlawful possession of a firearm by a serious violent felon. We now grant transfer with respect to a single issue raised by Beasley on appeal: whether the trial court abused its discretion in admitting Beamon's testimony that Allen told Beamon he had shot Beasley the day before Allen's murder, on the grounds his statements "had so great a

tendency . . . to expose the declarant to civil or criminal liability" such that "a reasonable person in the declarant's position would have made [the statement] only if the person believed it to be true," as permitted by Indiana Evidence Rule 804(b)(3). We find that it was not error for the trial court to admit Beamon's challenged testimony on that basis, and thus affirm.

**Facts and Procedural History**

According to Gerald Beamon's testimony, on the evening of August 2, 2012, Leandrew Beasley (a.k.a "Little Rock") and Beamon's cousin, James Allen, got into a fight in a garage; Beasley pulled a gun, Allen made a grab for it, and during the struggle, Beasley was shot in the face once, after which the gun would no longer discharge. Three other men, whom Allen identified as Levi, Little Billy, and "J Rock" (later identified as Beasley's brother, James), were also present at the altercation; Beamon was not. Allen then spent the night at a hotel room with his girlfriend, Shantell Williams, and the couple checked in under her name. Both Allen and Williams maintained permanent housing at that time; no explanation appears in the record for why they stayed at a hotel that night.

Beasley was treated for a gunshot wound to the face at a nearby hospital that evening, which was described by interviewing police officers as a "graze." Tr. at 628. Beasley did not implicate Allen in the shooting, instead stating that he was attacked while walking home. Police found no evidence of the shooting at the location where Beasley claimed he had been attacked.

The next day, Allen and Williams drove to Beamon's house. Williams waited in the car while Allen told Beamon about the fight. All three then left together to pick up some of Allen's things from his apartment and move them into Williams's apartment, and discovered Allen's home had been ransacked. Beamon and Allen also observed bullet holes in Allen's front porch. The group then went to Williams's friend's house, and Allen showed Beamon pictures of the men present in the garage the night before, including Beasley. Beamon had no prior familiarity with Beasley, and studied the photos for about ten minutes.

2

Beamon, Allen, and Williams then drove to Williams's apartment. Williams went inside while Allen and Beamon began to unload Allen's things onto the sidewalk. Beamon heard what at first he thought were fireworks, but quickly realized were gunshots, and saw three men approaching the vehicle on foot, firing repeatedly. Allen died on the spot. Beamon sustained multiple gunshot wounds, but still managed to flee, call 911, and flag down a passing police car. Beamon told the officer that "Little Rock" and "J Rock" were two of the shooters, and he was immediately taken to the hospital. Tr. at 398. After he was hospitalized, he indicated he had recognized Leandrew and James from the photographs Allen had showed him earlier in the day. Police retrieved the photos and returned with three separate photo line-ups, from which Beamon identified Leandrew and James as two of the shooters, and correctly identified who was who based on the information he had previously received from Allen.

Leandrew and James Beasley were subsequently charged with murder and attempted murder, and they were tried jointly.[1] The court permitted Beamon to testify—over both defendants' repeated hearsay objections—as to what Allen had told Beamon about the altercation between Allen and Leandrew Beasley, as a statement against Allen's penal interest under Indiana Evidence Rule 804(b)(3). The jury found Beasley guilty of murder and attempted murder.

Beasley appealed, and our Court of Appeals unanimously affirmed his convictions, finding the admission of this hearsay evidence was erroneous, but harmless. Beasley v. State, 30 N.E.3d 56, 67 (Ind. Ct. App. 2015). The panel found that the admission of Allen's hearsay statements were not "facially incriminating" since Allen only described acts of self-defense, and thus the statements did not qualify for a Rule 804(b)(3) hearsay exception. Id. In support, it discussed Jervis v. State in depth, where this Court found a hearsay statement was properly excluded from

---

[1] They were also each charged with assault of a third party, but that count was dismissed by directed verdict. In addition, Leandrew was individually charged with unlawful possession of a firearm by a serious violent felon. Leandrew waived his right to a jury trial on that charge and was convicted by the trial court.

admission as a statement against penal interest when it was "uncorroborated, only marginally against penal interest, and only marginally relevant." Id. at 65–67 (quoting Jervis v. State, 679 N.E.2d 875, 878–80 (Ind. 1997)). Nevertheless, the panel found this error to be harmless, as there were independent non-hearsay grounds for the conviction, specifically Beamon's identification of the Beasley brothers at trial as two of the shooters. Id. at 67.

We now grant transfer on this issue, vacating that portion of the opinion below. Ind. Appellate Rule 58(A). We summarily affirm the remainder of the Court of Appeals decision pursuant to Indiana Appellate Rule 58(A)(2).

## Standard of Review

"Wide discretion is afforded the trial court in ruling on the admissibility and relevancy of evidence." Nicholson v. State, 963 N.E.2d 1096, 1099 (Ind. 2012). Our review is thus limited to determining whether the court abused that discretion. Id. An abuse of discretion occurs when the decision is "clearly against the logic and effect of the facts and circumstances and the error affects a party's substantial rights." Clark v. State, 994 N.E.2d 252, 260 (Ind. 2013). We do not reweigh the evidence; rather, "we consider only evidence that is either favorable to the ruling or unrefuted and favorable to the defendant." Pierce v. State, 29 N.E.3d 1258, 1264 (Ind. 2015).

## Beamon's Hearsay Testimony Was Admissible as a Statement Against Interest Under Indiana Evidence Rule 804(b)(3).

Beasley contends it was harmful error to admit Beamon's hearsay testimony of Allen's statements to him, because: (1) Allen's statements described acts of self-defense that would not subject him to any criminal liability, and thus their admission under Rule 804(b)(3) was error; and (2) since this was the State's only evidence of Beasley's motive, the error was harmful.

4

We agree with Beasley's second contention, in principle. "While motive is not an element of the crime, the absence of motive is a significant exculpatory factor . . . ." Kiefer v. State, 761 N.E.2d 802, 806 (Ind. 2002) (reversing conviction for attempted murder in the absence of any evidence of motive, in part because "an inference is necessary to establish Kiefer's intent to kill"). Likewise, the inclusion of evidence of motive is likely a significant incriminating factor in the eyes of the jury. Moreover, we can discern no independent evidence in the record to explain why Beasley would have shot Allen and Beamon aside from Beamon's hearsay testimony of the previous night's altercation between Beasley and Allen; thus, the State's loss of that evidence would almost certainly have made it more difficult to reach a conviction. Beasley is therefore correct that if this testimony were erroneously admitted, it would be grounds for reversal.

We do not, however, agree with Beasley's first contention, and we find the trial court was within its discretion in ruling that Allen's statements were against his interests, such that they were admissible hearsay.

Indiana Evidence Rule 804(b)(3) reads, in relevant part:

> The following are not excluded by the hearsay rule if the declarant is unavailable as a witness.[2]
>  . . .
> (3) *Statement Against Interest*. A statement that [] a reasonable person in the declarant's position would have made only if the person believed it to be true because, when made, it was so contrary to the declarant's proprietary or pecuniary interest or had so great a tendency to invalidate the declarant's claim against someone else or to expose the declarant to civil or criminal liability . . . .

---

[2] It is undisputed that Allen is unavailable as defined by Indiana Evidence Rule 804(a)(4) due to his death.

5

Although we have not yet had occasion to review the current version of Rule 804(b)(3), we have reviewed prior iterations of this rule, which were substantively the same.[3] Most significantly, in Jervis v. State, the defendant wished to introduce hearsay testimony regarding an alternate perpetrator of the murder. 679 N.E.2d at 878. The statements in question were between Tony Floyd and his coworker, Marilyn Molinet; Molinet testified that the morning after the victim's body was discovered, Floyd told her that:

> [H]e had gone out "partying" two nights earlier (the same night [the victim] was killed), picked up a woman at Frenchie's, gone "riding around" with her, and then "dumped her off" behind Newburgh Cinema around 3 or 4 a.m. Molinet also testified that Floyd told her that he knew "the best way to kill a girl" and put his hands around his own neck to indicate strangulation, and that Floyd, who appeared to be "awful nervous," asked Molinet to be on the lookout for "detective cars."

Id. We found the trial court was within its discretion in determining that Rule 804(b)(3) did not permit introduction of this testimony, because it was not sufficiently against Floyd's interests: "The statements attributed to Floyd did not constitute an admission of a crime. In and of themselves they did not even 'tend to subject' Floyd to criminal liability. At most, they cast suspicion on Floyd when paired with other information that may or may not have been known to Floyd." Id. We concluded by reiterating the deference we extend to trial courts in determining such debatable questions of admissibility: "Trial judges 'are close to the facts and far better able to evaluate the various circumstances than an appellate court, [and] therefore must be given wide discretion to examine a particular statement to determine whether all or part of it should be

---

[3] See Jervis, 679 N.E.2d at 878 ("This case presents the first opportunity for this Court to put judicial flesh on the bones of Rule 804(b)(3). The parties focus their arguments on the extent to which a statement against penal interest must have 'so far tended to subject the declarant to civil or criminal liability . . . that a reasonable person in the declarant's position would not have made the statement unless believing it to be true.' Ind. Evidence Rule 804(b)(3).")

6

admitted.'" Id. at 879 (quoting Williamson v. United States, 512 U.S. 594, 621 (1994) (Kennedy, J., concurring in the judgment)).

More recently, in Camm v. State, the defendant wished to present statements made by Charles Boney, whom the defendant asserted was the sole perpetrator of the triple murder in question, rather than a co-conspirator. 908 N.E.2d 215, 220 (Ind. 2009). Boney's statements sought to be introduced were: (1) in response to a private investigator's hypothetical scenario, Boney stated that "if physical evidence of Boney's presence at the scene of the killings was found, it would be 'pretty obvious' he was there and involved"; and (2) Boney told a friend that "he had three bodies on his conscience, and that one more wouldn't matter." Id. at 232. We affirmed the trial court's exclusion of this testimony as not falling within the Rule 804(b)(3) hearsay exception, finding "there is nothing that Boney is alleged to have said to the defendant's investigator or to his friend that constituted an admission of a crime or tended to subject [Boney] to criminal liability." Id. (internal quotations omitted).

In both Jervis and Camm, the declarants' statements sought to be admitted (one referencing dumping off a woman and the other having bodies on one's conscience) were vague and subject to interpretation. Here, we have no such ambiguity: Allen gave Beamon a precise account of his altercation with Beasley, and stated in no uncertain terms that he shot Beasley in the face. (Tr. at 350–54.) Even if Allen believed the shooting was justified as a matter of self-defense, it does not necessarily follow that Allen believed there was no possibility of future civil or criminal liability for the act. Beasley opposes this position by likening Allen's statements to telling someone you "drove home drunk last night," in support of his assertion that "trivial 'confessions' of criminal conduct" should not be rendered admissible hearsay under Rule 804(B)(3). Appellant's Br. at 12. We cannot agree that the act of shooting a fellow human being in the face qualifies as "trivial." Rather, we find the trial court could have reasonably determined that admitting to such a violent act would have "so great a tendency . . . to expose the declarant to civil or criminal liability" that it was admissible hearsay under Rule 804(b)(3).

Beasley also contends that Allen's statements to Beamon do not satisfy the exception because Allen expected Beamon to "keep his confidences," and thus Allen did not believe the statements would expose him to criminal liability. Appellant's Br. at 11. A slight change to the facts demonstrates why this argument is unavailing—had Beasley named Allen as his shooter when speaking with police, there would have been at least a minimal investigation of Allen, as demonstrated by the investigation of Beasley's gunshot wound after he went to the hospital. It is not a stretch to presume police would have questioned those whom Allen had contact with the day after the shooting, including Beamon. Thus Beamon would have been put in the position of either lying to the police or revealing what Allen told him, which could have been incriminating despite Allen's claim of self-defense. In short, Allen's statements to Beamon rendered Beamon a witness against Allen should Allen be prosecuted for Beasley's shooting, which is sufficient for those statements to qualify as being against Allen's interests for purposes of a Rule 804(b)(3) hearsay exception.

Beasley also contends that Beamon's testimony was inherently unreliable, because at best the trauma of the shooting could have impacted Beamon's memory, and at worst, the personal and familial relationship between Allen and Beamon gave Beamon a motive to fabricate his testimony regarding Allen's report of the shooting. Even if this were so, there is sufficient other corroborating evidence in the record to support the trial court's determination that Allen's statements to Beamon—and Beamon's related testimony—were reliable.

First and most significantly, Beasley actually went to the hospital with a gunshot wound to the face on the night of August 2. This begs the question: how could Allen have known about Beasley's injury if he was not involved? The record is devoid of any evidence that this shooting was made public, or of any witness to Beasley's shooting who might have informed Allen it had occurred prior to Allen's conversation with Beasley the next day. Thus the trial court could have reasonably determined that Allen had firsthand knowledge of the event, lending credibility to Allen's statements to Beamon. Beasley counters this point by noting he did not report Allen as the shooter, even though Beasley was well aware of Allen's identity. There are, however, a number of potential reasons for this omission, the most obvious being that accepting Allen's account as

8

true, Beasley was shot with his *own* gun, and Beasley's very possession of that gun constituted a crime.[4] Beasley therefore could not reveal Allen as his shooter without also revealing his own criminal activity. Moreover, if Beasley truly did plan to dispatch Allen the following day, there would be no reason to reveal Allen's identity to the police—indeed, telling police that Allen had shot him might have resulted in Allen being incarcerated (at least temporarily), which would defeat such a plan. Finally, police found no evidence of the shooting at the location where Beasley claimed it had occurred, and thus the trial court could have reasonably determined that Beasley was being less than forthright in his version of events.

Second, police arrived at the hospital at approximately 8:30 p.m. the night Beasley was shot, and Allen thus could have been the shooter, since Williams testified she left Allen sometime after 5:00 p.m. and picked him up again between 9:00 and 10:00 p.m. At trial, Beasley alluded to contradictory deposition testimony, where Williams agreed that she had been with Allen from 5:00 p.m. onwards on August 2, to which Williams responded, "I must have been confused . . . ." Tr. at 684. Which account to credit was, however, within the province of the factfinder, and on appeal we construe the evidence in the manner most consistent with the trial court's judgment regarding the admissibility of evidence. See Pierce, 29 N.E.3d at 1264.

Third, Williams and Allen stayed at a hotel on the night of August 2 even though both had fixed housing nearby, and they checked in under Williams's name. These circumstances support the inference that Allen did not want to be easily located that night, either by police or by Beasley. Moreover, when coupled with the evidence of Allen's home being ransacked, Allen's decision to stay at a hotel supports the inference that Allen had cause to—and actually did—fear for his life,

---

[4] Indeed, Beasley was convicted here for unlawful possession of a firearm by a serious violent felon. (Tr. at 1010.)

9

which is consistent with Allen's account to Beamon of his violent altercation with Beasley and his fear of retaliation.

Although this corroborating evidence is not strictly required by our Rule 804(b)(3),[5] it certainly supports the trial court's determination that Beamon's hearsay testimony was reliable, which "is, after all, the ultimate justification for admission of statements against interest." Jarvis, 679 N.E.2d at 879. We thus find that the trial court did not abuse its discretion in admitting these hearsay statements under Rule 804(b)(3).

**Conclusion**

For the foregoing reasons, we affirm the admission of Gerald Beamon's testimony regarding James Allen's recount of his altercation with Leandrew Beasley, as such statements fell within the hearsay exception of Indiana Evidence Rule 804(b)(3). In all other respects, we summarily affirm the holding of our Court of Appeals below.

Rush, C.J., and Dickson, Rucker, and David, JJ., concur.

---

[5] By contrast, its federal counterpart expressly requires "corroborating circumstances that clearly indicate [the statement's] trustworthiness, if it is offered in a criminal case as one that tends to expose the declarant to criminal liability." Fed. R. Evid. 804(b)(3).