## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Aug 12 2016, 9:53 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Timothy P. Broden
Lafayette, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Lyubov Gore
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Mark Conley,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

August 12, 2016

Court of Appeals Case No.
79A02-1512-CR-2342

Appeal from the Tippecanoe Superior Court

The Honorable Steven P. Meyer, Judge

Trial Court Cause No.
79D02-1508-F5-45

**Crone, Judge.**

# Case Summary

[1] Mark Conley appeals his convictions and sentence for level 6 felony auto theft and level 6 felony operating a motor vehicle while privileges are suspended as a habitual traffic violator ("HTV"). The trial court also found Conley to be a habitual offender. The trial court sentenced Conley to consecutive terms of two and one-half years for auto theft, enhanced by five years based upon the habitual offender finding, and two and one-half years for operating a motor vehicle while privileges are suspended as an HTV, for an aggregate sentence of ten years. On appeal, Conley argues that the trial court abused its discretion in admitting certain evidence at trial. He also asserts that his sentence is inappropriate in light of the nature of his offenses and his character. Finding no abuse of discretion and that he has not met his burden to demonstrate that his sentence is inappropriate, we affirm.

# Facts and Procedural History

[2] On Thursday, August 6, 2015, Michael Dexter parked his 1975 Harley Davidson FXC motorcycle in his driveway on Schuyler Avenue in Tippecanoe County. Around 7:30 the next morning, Dexter discovered that his motorcycle was gone, and he contacted the police to report it stolen. That Sunday, Dexter could hear his motorcycle being driven somewhere through his neighborhood.

[3] Around noon on Monday, August 10, 2015, Matthew Lock was walking by a friend's house when he saw Conley working on what was later identified as Dexter's motorcycle in the friend's driveway. When Lock realized that Conley

was unable to start the motorcycle, he offered to help. Conley accepted Lock's assistance and told Lock that the motorcycle belonged to his father. Around 1:00 p.m. that day, Conley was driving Dexter's motorcycle when it broke down on I-65. Adam O'Connor pulled over to offer assistance. Indiana Department of Transportation employee Danny Matlock also stopped to assist Conley.[1] Conley told the men that he was having "some mechanical issues" with the motorcycle and that the battery was dead. Tr. at 80. When Matlock gave the license plate number of the motorcycle over his radio, Conley asked O'Connor to "take him away from there to get him out of there because the bike was hot – was stolen." *Id.* at 138. O'Connor told Conley that he "didn't want to be involved" and that he could not give him a ride. *Id.*

[4] After Matlock successfully jumpstarted the motorcycle, Conley drove away on it. O'Connor immediately called the police to report Conley's statement that the motorcycle was stolen. Then, as O'Connor exited I-65 a little while later, he saw Conley pushing the motorcycle into the parking lot of a gas station. O'Connor again called the police to report his observation.

[5] Indiana State Police Trooper Andrew Smith responded to the gas station and found the motorcycle unattended near the air pumps. He confirmed through dispatch that the motorcycle had been reported stolen and then spoke to

---

[1] Specifically, Matlock worked for the "Traffic Management Division, Hoosier [H]elpers." Tr. at 78. One of his job duties was to respond to emergencies on the interstate.

O'Connor to obtain a description of Conley. Trooper Smith and another officer subsequently located Conley behind a liquor store on the side of a nearby hotel.

[6] The motorcycle was towed and examined for fingerprints. Conley's fingerprint was found on the motorcycle's air breather cover. Conley was transported to the police station and was interviewed on two separate occasions. In one interview, Conley initially claimed that he had been drinking beer and hitchhiking, but that he did not know anything about a motorcycle. However, he eventually admitted to being a "runner" for the Outlaw motorcycle gang and that he had been stealing motorcycles for the gang on a daily basis. *Id.* at 7; State's Ex. 13. Conley admitted that he had stolen Dexter's motorcycle a few days earlier, that it had broken down on the interstate, and that he took off after a guy jumpstarted it for him. In a second interview, Conley admitted to stealing Dexter's motorcycle from a driveway on Schuyler Avenue. He stated that he had started stealing "runner bikes" for the Outlaw motorcycle gang approximately eighteen months prior. Tr. at 236. In his statements to police, Conley indicated that as a runner, he transported drugs for the gang.

[7] The State charged Conley with level 5 felony operating a motor vehicle while privileges are forfeited for life and level 6 felony auto theft. The State also alleged that Conley was a habitual offender. Prior to trial, Conley filed a motion to suppress his statements to police referencing his involvement with the Outlaw motorcycle gang arguing that the statements constituted improper character evidence pursuant to Indiana Evidence Rule 404(b)(1). The trial court ruled that any references to drug activity would be redacted but that the

more general references to gang involvement were relevant and admissible to show Conley's motive and/or plan for stealing Dexter's motorcycle.

[8] A jury trial was subsequently held on the auto theft count. Conley renewed his objection to the admissibility of his statements referencing gang involvement, but the trial court overruled his objection. The jury found Conley guilty as charged. Conley then waived his right to a jury trial on the remaining charges and, following a bench trial, the trial court found Conley guilty of level 5 felony operating a vehicle while privileges are forfeited for life. The trial court also found Conley to be a habitual offender.

[9] During sentencing, the trial court reduced Conley's level 5 felony conviction to a conviction for the lesser included offense of level 6 felony driving while privileges are suspended as an HTV. The court sentenced Conley to consecutive terms of two and one-half years for each level 6 felony, with the auto theft count enhanced by five years based upon the habitual offender finding, resulting in an aggregate sentence of ten years. This appeal ensued.

## Discussion and Decision

### Section 1 – The trial court did not abuse its discretion in admitting evidence regarding Conley's gang involvement.

[10] Conley first asserts that the trial court abused its discretion in admitting evidence regarding his gang involvement. The trial court is afforded wide discretion in ruling on the admissibility of evidence, and we review its ruling only for an abuse of discretion. *Beasley v. State*, 46 N.E.3d 1232, 1235 (Ind.

2016). An abuse of discretion occurs when the decision is clearly against the logic and effect of the facts and circumstances and the error affects a party's substantial rights. *Id.* We do not reweigh the evidence, and we consider only the evidence that is either favorable to the ruling or unrefuted evidence favorable to the defendant. *Id.*

[11] During trial, the State moved to admit two redacted statements that Conley made to police wherein he referenced the fact that he stole motorcycles for the Outlaw motorcycle gang. Conley objected to the evidence as inadmissible pursuant to Indiana Evidence Rule 404(b)(1), which provides that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." The rationale behind Rule 404(b) is that the jury is precluded from making the "forbidden inference" that prior wrongful conduct suggests present guilt. *Halliburton v. State*, 1 N.E.3d 670, 681 (Ind. 2013). However, the trial court overruled Conley's objection and accepted the State's reasoning that testimony regarding Conley's involvement in gang activity was admissible pursuant to Indiana Evidence Rule 404(b)(2) as evidence of his motive or plan in stealing Dexter's motorcycle. *See* Ind. Evidence Rule 404(b)(2) (permitting the introduction of evidence of other crimes, wrongs, or other acts for purposes such as "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.").

[12] In determining whether the trial court abused its discretion regarding the admissibility of 404(b) evidence, we must determine whether the evidence of

prior bad acts is relevant to a matter at issue other than the defendant's propensity to commit the charged acts. *Bishop v. State*, 40 N.E.3d 935, 951 (Ind. Ct. App. 2015), *trans. denied*. Second, we must balance the probative value of such evidence against its prejudicial effect pursuant to Indiana Evidence Rule 403. *Id*; *see* Ind. Evidence Rule 403 (relevant evidence may be excluded "if its probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence.") Here, as argued by the State and accepted by the trial court, the evidence of Conley's gang activity was highly relevant to a matter at issue other than his alleged bad character. Indeed, Conley's gang activity was directly relevant to his motive for stealing Dexter's motorcycle. "Evidence of motive is always relevant in the proof of a crime." *Wilson v. State*, 765 N.E.2d 1265, 1270 (Ind. 2002).[2] Conley does not argue in his appellate brief that the unfair prejudicial impact of the evidence substantially outweighed its probative value, and we do not think that it did based upon the high relevance of the evidence. Accordingly, the trial court did not abuse its discretion in admitting the evidence.

---

[2] Although auto theft is not a crime of violence, we note that evidence of gang affiliation is routinely admitted as proof of motive to commit an alleged violent crime. *See, e.g., Williams v. State*, 690 N.E.2d 162, 173 (Ind. 1997) (conspiracy to commit murder and murder); *Burgett v. State*, 758 N.E.2d 571, 579-80 (Ind. Ct. App. 2001) (attempted murder), *trans. denied* (2002); *Cadiz v. State*, 683 N.E.2d 597, 599-600 (Ind. Ct. App. 1997) (attempted murder).

## Section 2 – Conley has not met his burden to demonstrate that his sentence is inappropriate.

[13]     Conley next claims that his sentence is inappropriate and invites this Court to reduce his sentence pursuant to Indiana Appellate Rule 7(B) which provides that we may revise a sentence authorized by statute if, after due consideration of the trial court's decision, we find that the sentence "is inappropriate in light of the nature of the offense and the character of the offender."  The defendant bears the burden to persuade this Court that his or her sentence is inappropriate. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006).  Indiana's flexible sentencing scheme allows trial courts to tailor an appropriate sentence to the circumstances presented, and the trial court's judgment "should receive considerable deference."  *Cardwell v. State*, 895 N.E.2d 1219, 1222 (Ind. 2008). The principal role of appellate review is to attempt to "leaven the outliers."  *Id*. at 1225.  Appellate review "should focus on the forest—the aggregate sentence—rather than the trees—consecutive or concurrent, number of counts, or length of the sentence on any individual count."  *Id.*  Whether we regard a sentence as inappropriate at the end of the day turns on "our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other facts that come to light in a given case."  *Id*. at 1224.

[14]     Regarding the nature of the offenses, the advisory sentence is the starting point the legislature has selected as an appropriate sentence for the crime committed. *Fuller v. State*, 9 N.E.3d 653, 657 (Ind. 2014).  The sentencing range for a level 6 felony is between six months and two and one-half years, with an advisory

sentence of one year. Ind. Code § 35-50-2-7. The sentencing range for the habitual offender enhancement of a level 6 felony is between two and six years. Ind. Code § 35-50-2-8. Conley received consecutive two and one-half year sentences for his two convictions, with a five-year habitual offender sentence enhancement on his auto theft conviction.

[15] Conley makes no argument that the individual two and one-half year sentences for his level 6 felonies are inappropriate in light of the nature of those offenses. Instead, he complains that those sentences should be concurrent rather than consecutive because his crimes of auto theft and operating a motor vehicle while privileges are suspended as an HTV were "intertwined." Appellant's Br. at 8. We are not persuaded that consecutive sentences are unwarranted. Conley committed two separate offenses on different days, and he does not claim that his crimes arose out of the same "episode of criminal conduct" as contemplated by Indiana Code Section 35-50-1-2.[3] He committed auto theft on August 6, 2015, and he committed operating a motor vehicle while privileges are suspended as an HTV, likely repeatedly, over the next several days culminating in his arrest on August 10, 2015. It was proper for the trial court to impose consecutive sentences for separate statutory offenses. *Zachary v. State*, 469 N.E.2d 744, 749 (Ind. 1984). Moreover, the trial court found numerous

---

[3] That section provides that the aggregate sentence for conduct constituting a single episode of criminal conduct, except in situations involving "crimes of violence," may not exceed the advisory sentence for the class of felony that is one level higher than the most serious felony for which the defendant is convicted. *See* Ind. Code § 35-50-1-2.

aggravating circumstances that Conley does not challenge. He has not shown that the nature of his offenses warrants sentence revision.

[16] As for Conley's character, he concedes that he has an extensive criminal history spanning more than twenty years. While he states that "some degree" of his criminal history "is embodied in the habitual offender enhancement," he has numerous convictions that are wholly unrelated. Appellant's Br. at 8. At the time Conley committed the current offenses, he was on pretrial release on different charges for the same felony offenses, as well as on three misdemeanor charges for resisting law enforcement, theft, and criminal trespass. Prior attempts at leniency and rehabilitation have proven unsuccessful, as Conley has had his probation revoked six times. The record further shows that Conley has a long history of drug and alcohol abuse and has routinely failed to complete the treatment offered to him. All of this reflects quite poorly on Conley's character and is a strong indication that he is both unwilling and unable to alter his criminal and self-destructive behavior. Under the circumstances, Conley has not demonstrated that the ten-year aggregate sentence imposed by the trial court is inappropriate in light of the nature of his offenses or his character. Accordingly, we affirm his convictions and sentence.

[17] Affirmed.

Kirsch, J., and May, J., concur.