## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jul 27 2017, 10:41 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Alan K. Wilson
Muncie, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Ian McLean
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Marcus Ray Wilson, *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, *Appellee-Plaintiff* | July 27, 2017 <br><br> Court of Appeals Case No. 18A02-1612-CR-2949 <br><br> Appeal from the Delaware Circuit Court <br><br> The Honorable Linda Ralu Wolf, Judge <br><br> Trial Court Cause No. 18C03-1005-FB-13 |

**Altice, Judge.**

**Case Summary**

[1] Marcus Wilson appeals following his convictions for Class B felony criminal deviate conduct and Class D felony criminal confinement. He raises the following issues on appeal:

> 1. Did the trial court abuse its discretion in excluding opinion evidence concerning the victim's possible intoxication?
>
> 2. Is Wilson's fourteen-year sentence inappropriate?

[2] We affirm.

## Facts & Procedural History

[3] On November 28, 2009, Nigel Butterfield ran into his friend, Wilson. Nigel invited Wilson over for a drink, and the two went to the home Nigel shared with his wife, J.B., and their two-year-old daughter. J.B. did not know Wilson and asked Nigel to make him leave because she did not want strangers in their house and around their sleeping daughter. Nigel ignored J.B.'s requests, and Nigel, J.B., and Wilson all stayed up until the early morning hours drinking and listening to music.

[4] Nigel eventually passed out in the living room and J.B. said that she should go to bed, but Wilson did not leave. Wilson asked J.B. to come into the kitchen because he wanted to tell her something about Nigel, and when she did so, Wilson slammed her up against the kitchen counter and put his hand over her mouth. Wilson then forced J.B. into the bathroom, where he pushed her to the floor and began to strangle her. Wilson threatened to kill J.B. if she screamed,

and he told her that she would be fine if she just did what he said. Wilson then dropped his pants and exposed his penis. J.B. begged him not to rape her, and he forced her to perform oral sex on him until he ejaculated in her mouth. He then ordered her to swallow his semen. Before leaving the apartment, Wilson told J.B. to go ahead and call the police because he deserved it. J.B. waited until she thought Wilson was gone, then checked on her daughter before running to a neighbor's house and calling 911. Wilson was apprehended a short time later.

[5]     As a result of these events, Wilson was charged with Class B felony criminal deviate conduct and Class D felony criminal confinement. A warrant for Wilson's arrest was issued on May 19, 2010, but he was not arrested until February 2013. A jury trial commenced on November 21, 2016, at the conclusion of which Wilson was found guilty as charged. On December 19, 2016, Wilson was sentenced to concurrent terms of fourteen years for criminal deviate conduct and two years for criminal confinement, resulting in an aggregate sentence of fourteen years executed in the Department of Correction. Wilson now appeals.

## Discussion & Decision

### 1. Exclusion of Opinion Testimony

[6]     Wilson first argues that the trial court abused its discretion when it did not permit him to question the 911 operator concerning his opinion on whether J.B. sounded intoxicated during the 911 call. Trial courts are afforded wide

discretion in ruling on the admissibility of evidence, and our review of such decisions is limited to determining whether the court abused that discretion. *Beasley v. State*, 46 N.E.3d 1232, 1235 (Ind. 2016). An abuse of discretion occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances before it. *Id.* Moreover, even if a trial court abuses its discretion in admitting or excluding evidence, we will not reverse if the error is harmless. *Bell v. State*, 29 N.E.3d 137, 143 (Ind. Ct. App. 2015), *trans. denied*. "An error will be deemed harmless if its probable impact on the jury, in light of all of the evidence in the case, is sufficiently minor so as not to affect the substantial rights of the parties." *Id.* "[B]efore a federal constitutional error may be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." *Hall v. State*, 36 N.E.3d 459, 467 (Ind. 2015) (quoting *Chapman v. California*, 386 U.S. 18, 24 (1967)).

[7] At trial, Wilson asked the 911 operator whether he believed J.B. sounded intoxicated. The State objected, arguing Wilson had not established that the witness was qualified to give an opinion on that subject. The trial court sustained the objection, noting that the jury had heard the recorded 911 call and could make its own determination as to whether J.B. sounded intoxicated. Wilson did not make an offer of proof. On appeal, Wilson argues that the 911 operator's opinion was admissible under Ind. Evidence Rule 701 and that the exclusion of such testimony violated Wilson's constitutional right to confront and cross-examine witnesses.

[8] Wilson has waived these arguments by failing to make an offer of proof concerning the 911 operator's opinion as to whether J.B. sounded intoxicated. *See Barnett v. State*, 916 N.E.2d 280, 287 (Ind. Ct. App. 2009) (noting that an offer of proof is required to preserve an error predicated upon the exclusion of a witness's testimony), *trans. denied*. Waiver notwithstanding, and assuming *arguendo* that the testimony at issue was improperly excluded, any resulting error was harmless beyond a reasonable doubt. J.B. admitted that she had been drinking that night, and the members of the jury listened to J.B.'s recorded 911 call and were therefore able to judge for themselves whether J.B. sounded intoxicated and decide what, if any, impact that had on their assessment of her credibility. We have little difficulty concluding that hearing the 911 operator's opinions on the subject of J.B.'s intoxication would have made no appreciable impact on the jury. Accordingly, Wilson has not established reversible error on this basis.

## 2. Sentencing

[9] Wilson also argues that his fourteen-year sentence is inappropriate in light of the nature of the offense and his character. Article 7, section 4 of the Indiana Constitution grants our Supreme Court the power to review and revise criminal sentences. *See Knapp v. State*, 9 N.E.3d 1274, 1292 (Ind. 2014), *cert. denied*, 135 S.Ct. 978 (2015). Pursuant to Ind. Appellate Rule 7, the Supreme Court authorized this court to perform the same task. *Cardwell v. State*, 895 N.E.2d 1219, 1224 (Ind. 2008). Per App. R. 7(B), we may revise a sentence "if after due consideration of the trial court's decision, the Court finds that the sentence

is inappropriate in light of the nature of the offense and the character of the offender." *Inman v. State*, 4 N.E.3d 190, 203 (Ind. 2014) (quoting App. R. 7). "Sentencing review under Appellate Rule 7(B) is very deferential to the trial court." *Conley v. State*, 972 N.E.2d 864, 876 (Ind. 2012). "Such deference should prevail unless overcome by compelling evidence portraying in a positive light the nature of the offense (such as accompanied by restraint, regard, and lack of brutality) and the defendant's character (such as substantial virtuous traits or persistent examples of good character)." *Stephenson v. State*, 29 N.E.3d 111, 122 (Ind. 2015).

[10] The determination of whether we regard a sentence as inappropriate "turns on our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case." *Bethea v. State*, 983 N.E.2d 1134, 1145 (Ind. 2013) (quoting *Cardwell*, 895 N.E.2d at 1224). Moreover, "[t]he principal role of such review is to attempt to leaven the outliers." *Chambers v. State*, 989 N.E.2d 1257, 1259 (Ind. 2013). It is not our goal in this endeavor to achieve the perceived "correct" sentence in each case. *Knapp*, 9 N.E.3d at 1292. Accordingly, "the question under Appellate Rule 7(B) is not whether another sentence is *more* appropriate; rather, the question is whether the sentence imposed is inappropriate." *King v. State*, 894 N.E.2d 265, 268 (Ind. Ct. App. 2008) (emphasis in original).

[11] In order to assess the appropriateness of a sentence, we first look to the statutory range established for the classification of the relevant offense. Wilson committed a Class B felony and a Class D felony. The sentencing range for a

Class B felony is six to twenty years, with an advisory sentence of ten years. Ind. Code § 35-50-2-5. The sentencing range for a Class D felony is six months to three years, with an advisory sentence of one and a half years. I.C. § 35-50-2-7. Wilson was sentenced to concurrent terms of fourteen years executed for Class B felony criminal deviate conduct and two years for Class D felony criminal confinement. Thus, on both counts, he received a sentence greater than the advisory, but still well below the maximum.

[12] The nature of the offense does not support appellate revision of Wilson's sentence. Wilson's behavior in this case was predatory. He waited until Nigel passed out and then lured J.B. into the kitchen, where he violently assaulted her and forced her into the bathroom. Wilson pushed J.B. to the ground, strangled her, and threatened to kill her if she screamed or did not comply with his demands. Wilson then exposed himself and J.B. begged him not to rape her. Wilson then forced J.B. to perform oral sex on him while J.B.'s husband and daughter slept just a few rooms away and when he ejaculated, he ordered her to swallow his semen. Wilson's assertion that he "simply committed the offense proscribed by statute, without doing anything that 'aggravated' the offense" is not supported by the record. *Appellant's Brief* at 16. The trial court aptly described the facts of this case as "disturbing." *Appellant's Appendix Vol. 3* at 80.

[13] Considering Wilson's character, we note that he has a significant criminal history, including convictions for battery, public intoxication, criminal conversion, visiting a common nuisance, and theft. Additionally, a warrant was issued for Wilson's arrest during the pendency of this case for failure to

appear, and his bond was revoked after he was arrested for committing a felony drug offense while on pretrial release. Wilson also admitted to frequently using methamphetamine and heroin while out on bond in this case. In sum, nothing about Wilson's character persuades us that appellate revision of his sentence is warranted.

[14] Judgment affirmed.

[15] Kirsch, J. and Mathias, J., concur.