## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Aug 19 2016, 8:08 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Amy D. Griner
Mishawaka, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Jodi Kathryn Stein
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Quintin Mayweather-Brown, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff* | August 19, 2016 <br><br> Court of Appeals Case No. <br> 20A03-1601-CR-206 <br><br> Appeal from the Elkhart Superior Court <br><br> The Honorable Stephen R. Bowers, Judge <br><br> Trial Court Cause No. <br> 20D02-1506-FB-17 |

**Crone, Judge.**

# Case Summary

Quintin Mayweather-Brown ("Brown") appeals his conviction for class B felony burglary following a jury trial. On appeal, he makes numerous claims, including that the trial court abused its discretion in rejecting his notice of alibi and thereby excluding alibi witnesses from testifying at trial. He also asserts that the trial court abused its discretion during jury selection and in admitting certain evidence, that the prosecutor committed misconduct during rebuttal closing argument, and that the State presented insufficient evidence to sustain his conviction. We find that Brown has waived his challenge to the trial court's decision to reject his notice of alibi. Further, we find neither an abuse of discretion nor prosecutorial misconduct, and we conclude that the evidence was sufficient. Therefore, we affirm Brown's conviction.

# Facts and Procedural History

On November 12, 2013, Craig Johnson discovered that someone had broken into his apartment in Elkhart and stolen several items, including change from a coin jar, a Playstation console and controller, two sports hats, two sports jerseys, shoes and jeans, a thick silver necklace, a watch, a laptop computer, a military-issued backpack, a cell phone, and a pendant that contained his deceased brother's ashes. One of the sports hats and one of the sports jerseys were special ordered by Johnson and had unusual, distinctive, and recognizable characteristics.

[3] When investigating the break-in, police found that a front window screen of the apartment had been cut and the window was unlocked. They also found that the handle of the back door in the kitchen was locked, but the deadbolt was not locked. A fingerprint later identified as Brown's was found on the empty coin jar in Johnson's apartment. The coin jar had been moved during the commission of the crime from Johnson's bedroom to the living room. After police informed Johnson of the fingerprint identification and Brown's name, Johnson researched Brown on Facebook. Johnson did not know Brown. He saw photographs of Brown wearing what he believed to be his special ordered L.A. Lakers hat, Oakland Raiders football jersey, and thick silver necklace. The photographs were taken approximately two months after the items were stolen.

[4] The State charged Brown with class B felony burglary. An initial hearing was held on June 25, 2015, and Brown indicated that he wished to proceed pro se with the appointment of standby counsel. The trial court set an omnibus date and pretrial conference hearing for August 24, 2015. On September 3, 2015, Brown provided notice of alibi, which the trial court rejected as untimely. Brown filed a motion to reconsider, which the trial court denied.[1] A jury trial

---

[1] Although Brown states that he filed his notice on September 3, 2015, the chronological case summary contains no entry regarding the filing of a notice of alibi by Brown. However, in denying Brown's motion to reconsider, the trial court referenced the filing of the notice.

began on December 15, 2015. The jury found Brown guilty as charged. This appeal ensued.

## Discussion and Decision

## Section 1 – Brown has waived his assertion that the trial court abused its discretion in excluding alibi witnesses.

Brown first claims that the trial court abused its discretion in rejecting his notice of alibi as untimely and thereby excluding alibi witnesses from testifying at trial. However, we agree with the State that Brown has waived our review of the trial court's ruling. Brown failed to include a copy of his notice of alibi in the record on appeal, and therefore we have no way of assessing whether the notice complied with statutory requirements. *See* Ind. Code § 35-36-4-1.[2] It is the appellant's duty to present an adequate record clearly showing the alleged error, and failure to do so results in waiver of the issue on appeal. *Brattain v. State*, 777 N.E.2d 774, 776 (Ind. Ct. App. 2002). Moreover, it does not appear that Brown ever made an offer of proof to the trial court regarding the identity of the

---

[2] Whenever a defendant in a criminal case intends to offer in his defense evidence of alibi, the defendant shall, no later than:

> (1) twenty (20) days prior to the omnibus date if the defendant is charged with a felony; or
>
> (2) ten (10) days prior to the omnibus date if the defendant is charged only with one (1) or more misdemeanors;
>
> file with the court and serve upon the prosecuting attorney a written statement of his intention to offer such a defense. The notice must include specific information concerning the exact place where the defendant claims to have been on the date stated in the indictment or information.

alleged alibi witnesses or the nature of their testimony. "An offer of proof is the method by which the proponent of evidence preserves any error in its exclusion." *Tyson v. State*, 619 N.E.2d 276, 281 (Ind. Ct. App. 1993), *trans. denied*, *cert. denied* (1994). The offer of proof must demonstrate the substance, purpose, relevancy, and materiality of the excluded evidence in order to enable the appellate court to determine on appeal whether the exclusion was proper. *Id*. Failure to make an offer of proof about the nature of the testimony of alibi witnesses results in waiver of the issue on appeal. *Herrera v. State*, 679 N.E.2d 1322, 1325 (Ind. 1997). We conclude that Brown has waived our review of this issue.

## Section 2 – The trial court did not abuse its discretion during jury selection.

[6] Brown next contends that the trial court abused its discretion during jury selection. Specifically, he argues that he was denied his right to an impartial jury in violation of Article 1, Section 13 of the Indiana Constitution because the trial court denied his challenge for cause as to prospective juror Whitaker and then subsequently denied his motion to dismiss the entire jury panel.[3] We will address each assertion in turn.

---

[3] Article 1, Section 13 of the Indiana Constitution provides: "In all criminal prosecutions, the accused shall have the right to a public trial, by an impartial jury...."

## Section 2.1 – Brown cannot demonstrate reversible error in the trial court's denial of his challenge for cause as to prospective juror Whitaker.

[7]     At the outset of jury selection, prospective juror Whitaker indicated that she was "friends" with Deputy Prosecutor Ditton, one of the prosecutors trying the case. Tr. at 125. Later, she explained that she only knew Ditton from a community public service organization in which they were both involved. Whitaker stated that it would be "really difficult" to be fair and impartial but she thought that she "could do a good job" and would do her "very best." *Id.* at 240-41. Brown attempted to challenge Whitaker for cause, arguing that she had admitted that it would be hard for her to be impartial. The trial court denied his for-cause challenge, stating, "I think she's in that gray area but she has indicated also that she could return a not guilty verdict. So I'm not going to give it to you for cause but you have an available peremptory challenge and you may take her as a peremptory." *Id.* at 277-78. Brown thus exercised one of his final three peremptory challenges to strike Whitaker.

[8]     The trial judge has the inherent authority and responsibility to dismiss biased jurors for cause, either sua sponte or upon counsel's motion, and is afforded broad discretion in making these decisions. *Whiting v. State*, 969 N.E.2d 24, 29 (Ind. 2012). On appeal, we afford substantial deference to the trial judge's decision respecting a challenge for cause and will find error only if the decision is illogical or arbitrary. *Id.* Before a party may seek appellate review of an unsuccessful for-cause motion, the party is required to satisfy the exhaustion

rule. *Oswalt v. State*, 19 N.E.3d 241, 246 (Ind. 2014). Our supreme court has explained,

> The exhaustion rule requires parties to peremptorily remove jurors whom the trial court refuses to strike for cause or show that they "had already exhausted [their] allotment of peremptories" at the time they request for-cause removal. And "even where a defendant preserves a claim by striking the challenged juror peremptorily," an appellate court will find reversible error "only where the defendant eventually exhausts all peremptories *and* is forced to accept either an incompetent or an objectionable juror." The rule promotes judicial economy: parties should use the tools at their disposal to cure error and avoid significant costs that will accrue to the judiciary, the parties, and the citizen jurors. Failure to comply with the exhaustion rule results in procedural default.

*Id*. (citations omitted). The requirement that the defendant demonstrate that he was forced to accept either an incompetent or an objectionable juror is simply a recognition of our well-established standard of review in the voir dire context: namely, that reversible error occurs only when the error has prejudiced the defendant. *Id*. at 249.

[9]     Here, although Brown properly preserved his claim by striking Whitaker peremptorily, Brown cannot show reversible error. He failed to make a sufficient record in the trial court that, because he had exhausted his allotment of peremptories, he was forced to accept either an incompetent or an objectionable juror. Brown's bald assertion on appeal that there were simply "several objectionable jurors … who remained on his jury" is insufficient. Appellant's Br. at 14. Brown failed to direct the trial court to any specific juror

who he believed was incompetent or objectionable that he was forced to accept, and therefore he cannot show that he was prejudiced by the trial court's refusal to strike prospective juror Whitaker for cause. This brings us to Brown's next argument.

## Section 2.2 – The trial court did not abuse its discretion in denying Brown's motion to dismiss the entire jury panel.

[10] Near the conclusion of jury selection, Brown moved to strike the entire jury panel because "a good majority of them have been victims of a crime such as a theft …." Tr. at 330. The State agreed that "several" panel members had been victims, but noted that each member had indicated his or her ability nonetheless to be fair and impartial. *Id*. at 331. The trial court also noted the "significant" number of panel members who had been victims, but found that the jurors had been "unequivocal about their ability to be fair." *Id*. at 332. Accordingly, the trial court denied Brown's motion to strike the jury panel.

[11] "A trial court's decision whether or not to dismiss a jury panel will be reviewed for an abuse of discretion. Only when evidence is presented which establishes the jury's inability to impartially try the case, will a dismissal be warranted." *Crain v. State*, 736 N.E.2d 1223, 1233 (Ind. 2000) (citation omitted). No such evidence was presented here. As noted above, each of the panel members who

were victims of crime unequivocally expressed his or her ability to be fair.[4]
Under the circumstances, we cannot say that the trial court abused its discretion
in denying Brown's motion to strike the entire jury panel.

## Section 3 – The trial court did not abuse its discretion in admitting fingerprint evidence.

[12] Brown asserts that the trial court abused its discretion in admitting evidence
that his fingerprint was recovered from the empty coin jar found inside
Johnson's apartment. The trial court is afforded wide discretion in ruling on
the admissibility of evidence, and we review its ruling only for an abuse of
discretion. *Beasley v. State*, 46 N.E.3d 1232, 1235 (Ind. 2016). An abuse of
discretion occurs when the decision is clearly against the logic and effect of the
facts and circumstances and the error affects a party's substantial rights. *Id*.
We do not reweigh the evidence, and we consider only the evidence that is
either favorable to the trial court's ruling or unrefuted evidence favorable to the
defendant. *Id*.

[13] At trial, Brown objected to the admission of the fingerprint evidence on chain of
custody grounds. In order to establish proper chain of custody, the State "must

---

[4] On appeal, Brown points only to Juror Dibley as a crime victim who was actually seated on the jury. Our review of the record reveals that during voir dire, Dibley stated that he had some videotapes stolen out of his pickup truck twenty-five years ago. When asked whether he could be fair and impartial regarding his consideration of the evidence, he responded, "Yes." Tr. at 282. The State indicates that Juror Roose was also a crime victim who remained on the seated jury. Roose had a radio stolen out of his car forty-two years ago during a high school football game. Roose indicated that he could hardly remember any details of the theft and responded "absolutely not" when asked whether that event would prevent him from being fair and impartial. *Id*. at 134.

give reasonable assurances that the evidence remained in an undisturbed condition. However, the State need not establish a perfect chain of custody, and once the State 'strongly suggests' the exact whereabouts of the evidence, any gaps go to the weight of the evidence and not to admissibility." *Troxell v. State*, 778 N.E.2d 811, 814 (Ind. 2002) (citations omitted). Indeed, "[t]here is a presumption of regularity in the handling of evidence by public officers." *Bell v. State*, 881 N.E.2d 1080, 1084 (Ind. Ct. App. 2008), *trans. denied*. Accordingly, merely raising the possibility of tampering is insufficient for a successful challenge to the chain of custody. *Id.*

[14] Here, Elkhart Police Officer Andy Chrobot testified that he observed a fingerprint on the empty coin jar found in Johnson's living room and that he lifted the print onto a "hinge lifter." Tr. at 499. After transporting the hinge lifter to the police station, he "tagged" it in as evidence, "sealed it in a clear plastic bag," "initialed the bag," "put the case number" on the bag, "printed out an evidence voucher, signed that," and "put the evidence voucher attached to the hinge lifter in the bag into [the] secured evidence room." *Id.* Officer Chrobot stated that the sealed fingerprint evidence was then sent to "the lab." *Id.* at 500. The record indicates that the although the evidence was originally sent to the Indiana State Police Regional Laboratory in Fort Wayne, due to the high volume of evidence, it was then sent to the Indianapolis Regional Laboratory. Lorinda Gibbs from the Indianapolis laboratory testified that she received the fingerprint evidence in a sealed condition and that "it was apparent that it had not been opened since the date that it was sealed in that bag when it

was collected." *Id*. at 560. Gibbs personally processed the evidence and uploaded it into the AFIS database, which resulted in a potential match to Brown. After confirming that match with the AFIS fingerprint card and a new set of fingerprints taken from Brown in January 2014, Gibbs opined that the fingerprint on the empty coin jar belonged to Brown.

[15] This testimony provided a reasonable assurance that the fingerprint evidence remained undisturbed as it passed from the custody of Officer Chrobot to Gibbs and strongly suggests the exact whereabouts of the evidence at all times. Brown complains that the State presented no testimony to indicate how the evidence precisely "went from Officer Chrobot to Gibbs," especially since the evidence was initially sent to the Fort Wayne laboratory before being sent to Indianapolis. Appellant's Br. at 16. As noted above, the State is under no obligation to establish a perfect chain of custody, and Brown has offered no evidence to overcome the presumption of regularity and due care exercised in the handling of the evidence. Brown's complaints go to the weight of the evidence, not to its admissibility. The trial court did not abuse its discretion in admitting the fingerprint evidence.

## Section 4 – The prosecutor did not commit misconduct during rebuttal closing argument.

[16] In an attempt to explain the presence of his fingerprint on the empty coin jar, Brown argued during closing that he was friends with a previous tenant of Johnson's apartment, Justin Felder, and that Felder still had a key to the apartment. Brown argued, "I could have came [sic] there on a different day in

which nothing puts me at the scene to contradict anything besides the fingerprint on the jar." Tr. at 697-98. He went on to say, "So me and Mr. Justin Felder – if he had access to this home and clearly the victim thought that and they never ruled out that – he would have no problem sneaking me in if I needed to use the bathroom if he had a key." *Id*. at 702. Brown then criticized the State for not calling Felder as a witness.

[17] In rebuttal, the prosecutor responded, "There's no evidence in this case that Justin was involved whatever. Defense calls his own witnesses. In this case the defendant called witnesses. He had every opportunity to call Justin if he wanted to hear from him that bad." *Id*. at 707. Brown objected, claiming that the State was shifting the burden of proof and indirectly commenting on his failure to testify. The trial court overruled the objection, informing Brown that he had opened the door to the prosecutor's argument and that "this is not a commentary on your failure to testify nor does it place the burden of proof on you." *Id.* at 708. The prosecutor continued, "the defense could have called Justin to the stand …. He, just like the State, could have called Justin as a witness to say did you let me in with a key? Did you do that?" *Id*. The prosecutor subsequently argued, "And if you want to try or want to believe his self-serving uncorroborated claim that this phantom Justin Felder let him in with a key that doesn't mean [Brown] didn't commit a crime. That just means he committed the crime with Justin Felder." *Id*. at 710. Brown objected again and moved for a mistrial. The trial court sustained the objection as far as the

State's implication that Felder was actually involved in the crime, but denied the motion for mistrial.

[18] Brown contends that the prosecutor's comments constituted misconduct because they improperly referred to his failure to testify and shifted the burden of proof. In reviewing a claim of prosecutorial misconduct that was properly preserved, we determine (1) whether misconduct occurred, and if so, (2) whether the misconduct, under all of the circumstances, placed the defendant in a position of grave peril to which he should not have been subjected. *Ryan v. State*, 9 N.E.3d 663, 667 (Ind. 2015).[5] "Whether a prosecutor's argument constitutes misconduct is measured by reference to case law and the Rules of Professional Conduct." *Id.* (citation omitted).

[19] The Fifth Amendment to the United States Constitution provides that no person "shall be compelled in any criminal case to be a witness against himself." "'The Fifth Amendment privilege against compulsory self-incrimination is violated when a prosecutor makes a statement that is subject to reasonable interpretation by a jury as an invitation to draw an adverse inference from a defendant's silence.'" *Boatright v. State*, 759 N.E.2d 1038, 1043 (Ind. 2001) (quoting *Moore v. State*, 669 N.E.2d 733, 739 (Ind. 1996)). The defendant

---

[5] The State asserts that Brown, who proceeded at trial pro se, failed to properly preserve his claim, but the record reveals that Brown made a contemporaneous objection to the prosecutor's comments immediately followed by a motion for mistrial. Tr. at 707, 710. We think that this was sufficient to preserve the issue for appeal even absent a request for a jury admonishment. *But see Ryan*, 9 N.E.3d at 667 (generally to preserve a claim of prosecutorial misconduct, "the defendant must—at the time the misconduct occurs—request an admonishment to the jury, and if further relief is desired, move for a mistrial.")

bears the burden of showing that a comment improperly penalized the exercise of the right to remain silent. *Moore,* 669 N.E.2d at 739. "In determining whether a prosecutor's comments are error, fundamental or otherwise, we look to see if the comments in their totality are addressed to the evidence rather than the defendant's failure to testify. If so, there are no grounds for reversal." *Carter v. State,* 686 N.E.2d 1254, 1262 (Ind. 1997). Arguments that focus on the uncontradicted nature of the State's case do not violate the defendant's right to remain silent. *Id.* (citing *Isaacs v. State,* 673 N.E.2d 757, 764 (Ind. 1996)).

[20] We agree with the trial court that the prosecutor's comments during rebuttal closing argument neither referred to Brown's failure to testify nor shifted the burden of proof. Instead, the prosecutor's statements directly addressed the defense's theory of the case and focused on the State's evidence and the lack of contradictory evidence. In other words, the prosecutor's comments were properly addressed to Brown's closing argument rather than to Brown's failure to testify or to the burden on proof. *See Callahan v. State*, 527 N.E.2d 1133, 1137 (Ind. 1988) (noting that remark about lack of an explanation by the defense concerning otherwise incriminating evidence is proper so long as prosecutor focuses on absence of evidence to contradict State's evidence and not on accused's failure to testify); *Zamani v. State*, 33 N.E.3d 1130, 1143 (Ind. Ct. App. 2015) (prosecutor's argument noting lack of explanation for defendant's behavior focused on State's evidence and lack of contradictory evidence, not on defendant's failure to testify), *trans. denied*; *Hancock v. State*, 737 N.E.2d 791, 798 (Ind. Ct. App. 2000) (holding that prosecutor's statements were not

inappropriate comment on defendant's failure to testify but rather proper comment on defendant's failure to present convincing evidence to support defense). Based upon our review of the prosecutor's comments in their totality, we conclude that no misconduct occurred.

## Section 5 – The State presented sufficient evidence to sustain Brown's conviction.

Finally, Brown contends that the State presented insufficient evidence to sustain his conviction. When reviewing a claim of insufficient evidence, we neither reweigh the evidence nor assess witness credibility. *Bell v. State*, 31 N.E.3d 495, 499 (Ind. 2015). We look to the evidence and reasonable inferences drawn therefrom that support the verdict and will affirm if there is probative evidence from which a reasonable factfinder could have found the defendant guilty beyond a reasonable doubt. *Id*. In short, if the testimony believed by the trier of fact is enough to support the verdict, then the reviewing court will not disturb the conviction. *Id*. at 500.

To prove that Brown committed class B felony burglary, the State was required to prove that he broke and entered Johnson's "dwelling" with intent to commit a felony in it. *See* Ind. Code § 35-43-2-1. Brown asserts that the State presented insufficient evidence to establish his identity as the burglar. Specifically, he contends that the State failed to prove that he broke and entered Johnson's apartment with intent to commit theft in it because his fingerprint was not found on any point of entry or at other various places inside the apartment but merely on the empty coin jar. He argues that such evidence does not establish

"where or when" he touched the jar, and that although Johnson's apartment was not a public place, he could have touched the jar at a different time and not necessarily during the commission of a crime. Appellant's Br. at 22.

[23] Brown's argument is without merit. Our supreme court has held that "a finger, palm, or bare footprint found in a place where a crime was committed may be sufficient proof of the defendant's identity." *Meehan v. State*, 7 N.E.3d 255, 258 (Ind. 2014) (citing *Shuemak v. State*, 254 Ind. 117, 119, 258 N.E.2d 158, 159 (1970)). Other considerations include the defendant's legitimate access to the fingerprinted object, relocation of the object from its point of origin, and the defendant's authorization to enter the dwelling or structure. *Id*. (citing *Mediate v. State*, 498 N.E.2d 391, 393 (Ind. 1986)). As the court explained in *Mediate*,

> [t]he preclusion of legitimate access to the object supports the inference that the fingerprints were not made in a lawful manner. Whether the fingerprinted object was located in a public or private place is an important factor. When [the] defendant's fingerprint is found on an object which was never accessible to the public a reasonable inference arises that the print was made during the crime.

498 N.E.2d at 394.

[24] Johnson testified that he did not know Brown and never gave Brown permission to enter his apartment and remove his personal property. Brown's fingerprint was found on an object which has never been accessible to the public, and the object was clearly relocated from its point of origin during the commission of the offense. The jury reasonably could have inferred that Brown

left his print on the coin jar when he committed the burglary. Moreover, Brown's fingerprint is not the only evidence establishing his identity as the perpetrator of the burglary. Johnson testified that he believed that the hat, jersey, and necklace that Brown wore in his Facebook photograph were the same items that were stolen from his apartment. The fingerprint evidence coupled with additional circumstantial evidence presented by the State was sufficient to support Brown's conviction. His assertions on appeal are merely a request that we reweigh the evidence in his favor, and we will not.

[25] Affirmed.

Kirsch, J., and May, J., concur.